IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| Brenda Y. Johnson<br><br>    Plaintiff,<br><br>v.<br><br>BURKE COUNTY SHERIFF ALFONZO WILLIAMS in his individual and official capacity;<br><br>BURKE COUNTY SHERIFF'S OFFICE;<br><br>    Defendants. | CV 1:24-cv-00238<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Plaintiff, Brenda Y. Johnson, by and through undersigned counsel, and files her First Amended Complaint against the above-captioned Defendants. This action is brought to recover damages and to enjoin and declare unconstitutional the Defendants' violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, as well as her rights under Title VII of the Civil Rights Act of 1964 to be free from sexual harassment and related state tort laws, including those prohibiting stalking, invasion of privacy, and intentional infliction of emotional distress.

**INTRODUCTION**

This action arises from a pattern of egregious sexual harassment, unlawful surveillance, stalking, retaliation, and emotional abuse by Sheriff Alfonzo Williams during Plaintiff Brenda Y. Johnson's employment with the Burke County Sheriff's Office ("BCSO"). Sheriff Williams used his position of power to coerce and intimidate Plaintiff, repeatedly propositioning her for sex, surveilling her movements, tracking her vehicle, and ultimately firing her in retaliation for

opposing his sexual advances during the course of her employment. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and Georgia tort law, including causes of action for stalking, invasion of privacy, and intentional infliction of emotional distress. Plaintiff seeks reinstatement, compensatory and punitive damages, injunctive relief, and attorney's fees.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States and under 28 U.S.C. § 1343(a)(3) because it is authorized by law to be commenced by a person "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

2. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that the transactions and occurrences that comprise her state law claims form part of the same case or controversy as her federal claims.

3. Venue is proper under 28 U.S.C. § 1391 because the majority of events giving rise to these claims occurred in Burke County, Georgia.

## Parties

4. Plaintiff Brenda Y. Johnson is a citizen and resident of Georgia.

5. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 42 U.S.C. § 2000e(f) of Title VII.

6. Defendant Burke County Sheriff's Office is a public employer and subject to suit under Title VII via suit against Sheriff Alfonzo Williams in his official capacity.

7. Defendant Sheriff Alfonzo Williams is the elected Sheriff of Burke County. He is sued in his individual and official capacities.

8. Defendant Sheriff Williams is a resident of Burke County and can be served through his attorney, Russell A. Britt, located at 191 Peachtree Street NE, Suite 2900, Atlanta, GA 30303.

9. Defendant Sheriff Alfonzo Williams was at all relevant times acting under color of state law and is properly sued in his individual and official capacities under 42 U.S.C. § 1983 for violations of the Plaintiff's constitutional rights.

10. At all relevant times, Defendant BCSO was an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

11. At all relevant times, Defendant Williams, in his official capacity, was an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

12. Pursuant to the Georgia Tort Claims Act ("GTCA"), codified at O.C.G.A. §§ 50-21-20 to 50-21-37, Plaintiff brings her state law claims against Defendant Williams in his personal capacity for acts committed outside of the scope of his official duties.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff timely filed a charge of discrimination with the EEOC. (Charge No. 410-2023-10992).

14. On September 23, 2024, Plaintiff received a Dismissal and Notice of Right to Sue. (attached as Ex. 1).

15. Acting pro se, on December 19, 2024, Plaintiff initiated this action within 90 days of receipt of that notice.

## FACTUAL ALLEGATIONS

16. Plaintiff graduated from Burke County High School in 2002.

17. She is the mother of two boys.

18. In 2005, she received an Associate's Degree from Augusta Technical College in Early Childhood Education.

19. On August 1, 2018, Plaintiff began working for the BCSO as Communications Officer/Dispatcher.

20. In 2022, while working for the BCSO, Plaintiff received her Bachelor's Degree in Business Administration.

21. She began her work at the Judicial Center and was not in contact with Sheriff Williams on a daily basis.

22. In December of 2020, Sheriff Williams reassigned her to the position of Human Resources Generalist at BCSO.

23. The HR Generalist position was created by Sheriff Williams to keep Plaintiff in his immediate presence and under his direct supervision.

24. Sheriff Williams told her that she had to take the position because he did not want her working at the Judicial Center where he could not see her on a daily basis.

25. Sheriff Williams told another deputy that Plaintiff was pretty and that right there will get you fired.

26. Sheriff Williams told the deputy that even looking at Plaintiff would be grounds for termination.

27. Sheriff Williams told her she had to take the Human Resource position or be terminated.

28. On or about July 15, 2021, Sheriff Williams ran the tag of a vehicle belonging to a client of a business she operated in addition to and separate from her employment with BCSO.

29. In doing so, Sheriff Williams placed Plaintiff and her client under surveillance.

30. Sheriff Williams had no legitimate law enforcement purpose for running the vehicle's tag.

31. Sheriff Williams asked another deputy employee to purchase a tracker for him.

32. On or around July 27 through July 29, 2021, Sheriff Williams placed a GPS tracker on Plaintiff's vehicle, which he used to monitor her travel.

33. Sheriff Williams had no legitimate law enforcement purpose to track Plaintiff or her vehicle.

34. Sheriff Williams had no warrant authorizing his use of a GPS tracker on Plaintiff's vehicle.

35. Sheriff Williams had asked another BCSO employee to purchase a GPS tracker for him.

36. Sheriff Williams put the GPS tracker on the Plaintiff's car while at the BCSO without legal justification for doing so.

37. Sheriff Williams showed another employee a screenshot of Plaintiff's location, which was produced by the GPS tracker.

38. On or about July 30, 2021, Sheriff Williams informed Plaintiff that he had placed a GPS tracker on her vehicle.

39. On August 4, 2021, Sheriff Williams called Plaintiff into his office for a meeting.

40. During the meeting, Sheriff Williams became enraged and screamed at her, accusing her of not working hard enough when she confronted him about the tracker.

41. During the meeting, she told him that he was making her work environment very hostile and she was fine in dispatch.

42. The suspension was another form of intimidation.

43. Sheriff Williams kept moving her whenever other deputies talked to her.

44. She told him that other employees were noticing how he treated her and that one had inquired about a prior event where Sheriff Williams had knocked things off her desk in anger.

45. Sheriff Williams angrily told Plaintiff she was suspended for the rest of the day.

46. Crying uncontrollably, Plaintiff left and immediately went to the Human Resources Director who told her she needed to put it in writing to do anything but Plaintiff feared losing her job and retaliation.

47. The HR Director also stated that she was unaware of any suspension.

48. On the day that Sheriff Williams knocked the items from her desk, he had noticed that she had flowers on her desk and stated, "Oh, I see you have flowers again."

49. Plaintiff said nothing and kept working.

50. In response, Sheriff Williams angrily knocked everything off her desk.

51. Plaintiff was frightened and she closed her office door and cried.

52. On August 5, 2021, Sheriff Williams transferred Plaintiff to the position of Sex Offender Registry Compliance Officer.

53. At the direction of Sheriff Williams, Plaintiff was required to attend a training course in Dublin, Georgia for the Sex Offender Registry Position.

54. Plaintiff was not aware that anyone else would go to the class.

55. Sheriff Williams attended the class but Plaintiff noticed no other Sheriffs were there.

56. Originally there were two rooms booked.

57. Sheriff Williams moved them to another hotel due to the smell of the original hotel, and at the new hotel, he claimed the hotel was fully booked and there was only one room available for them to share.

58. Plaintiff slept fully clothed, on a chair, while Sheriff Williams slept in the only bed in the room.

59. During the trip to Dublin in 2022 for training, Sheriff Williams made several sexual advances towards Plaintiff, which despite fear of reprisal, she repeatedly refused.

60. Plaintiff later learned that while driving to Dublin, Sheriff Williams inconspicuously took a picture of Plaintiff and messaged it to another deputy with the comment, "I'm about to go and f- Brenda."

61. Plaintiff did not have sex with Sheriff Williams.

62. On or about May 2, 2022, Sheriff Williams texted the Plaintiff and asked, "when can I have some loving?"

63. Plaintiff did not respond.

64. On or about May 5, 2022, Sheriff Williams texted the Plaintiff "Bring my pussy to Alabama."

65. The Plaintiff replied, "No."

66. Plaintiff feared for her job the whole time and was under constant stress.

67. In August of 2022, Sheriff Williams assigned Plaintiff to the position of Grant Writer, a position she did not want due to the allegations against the Sheriff regarding the use and misuse of public funds and she had no grant writing experience.

68. On November 21, 2022, when Plaintiff arrived that morning Sheriff Williams told Plaintiff that the two of them would be attending a grant writing course in Statesboro.

69. They drove to Statesboro but the Sheriff decided that they would not attend.

70. During this trip, Sheriff Williams again tried to get Plaintiff to go to the hotel with him.

71. Sheriff Williams repeatedly called and asked her to come to his hotel room and "give him some loving."

72. Plaintiff refused, yet Sheriff Williams continued to pressure Plaintiff into a sexual relationship with him.

73. Plaintiff was in the process of trying to buy a home and feared losing her job but she did not give in.

74. Eventually, Sheriff Williams became angry and drove her back to Burke County.

75. In April of 2023, Plaintiff requested reassignment from the Grant Writer position.

76. On April 17, 2023, Sheriff Williams reassigned Plaintiff to work in the detention center under Major Smith.

77. On April 23, 2023, Plaintiff received a text message from Sheriff Williams at 5:29 a.m.

78. In that text message, Sheriff Williams accused Plaintiff of messaging his wife about his sexual overtures towards Plaintiff.

79. On May 1, 2023, Major Smith told Plaintiff to turn in the "order book."

80. The "order book" was a notebook created by Plaintiff, over time and with considerable effort, for better organizing office orders.

81. On May 3, 2023, Sheriff Williams sent Plaintiff an email directing her to report to work at 5:45 a.m. on May 4th to recreate the order book.

82. Sheriff Williams instructed her to recreate this notebook within 12 hours or face termination.

83. May 4, 2023 was Plaintiff's scheduled day off, so she was subsequently advised not to report to work that day.

84. On May 8, 2023, Sheriff Williams called Plaintiff in for a meeting during which he terminated her employment.

85. Prior to the meeting, three people told her she had a meeting with the Sheriff but don't worry about it or worry about the book, you are not going to be fired.

86. Plaintiff had no prior write ups or warnings in her file. She was not on a performance improvement plan.

87. Plaintiff was terminated under the pretext of "insubordination" for not recreating the notebook.

88. Plaintiff was terminated just three months shy of becoming vested in her retirement.

89. Sheriff Williams tried to hire her back the next day but she was not able to take the sexual harassment anymore, and on the advice of counsel, she did not accept the offer to return.

90. No effective corrective action was taken due to the position of Sheriff Williams.

91. Defendant's actions caused severe emotional distress and physical harm, including recurrent shingles, anxiety, insomnia, and loss of insurance and benefits.

92. Plaintiff has been effectively blacklisted from employment in her local area due to Sheriff Williams actions.

## CLAIMS FOR RELIEF

COUNT I: HOSTILE WORK ENVIRONMENT VIA SEXUAL HARASSMENT

(Official Capacity) (Title VII – 42 U.S.C. § 2000e-2(a))

93. Plaintiff re-alleges and incorporates by reference paragraphs 1–92.

94. Title VII prohibits employers from discriminating against employees on the basis of sex, including creating a hostile work environment through sexual harassment.

95. Plaintiff was subjected to repeated, persistent, graphic, and unwelcome sexual advances by Sheriff Williams.

96. Sheriff Williams engaged in unlawful and harassing surveillance by tracking her using a GPS device he physically placed on her vehicle.

97. Sheriff Williams engaged in unlawful and harassing surveillance by accessing her vehicle activity through GCIC searches for no legal purpose.

98. Sheriff Williams engaged in unlawful and harassing behavior by sending her text messages warning of retaliation: "You better remember payback."

99. Plaintiff rejected all of his advances.

100. Plaintiff never had sex with Sheriff Williams.

101. Throughout her employment, Plaintiff was subjected to pervasive and unwelcome sexual harassment by Defendant Sheriff Williams, including graphic sexual propositions, lewd messages, and retaliatory acts when she rejected his advances.

102. Sheriff Williams told other male employees of BCSO that Plaintiff was "off limits" because she belonged to him.

103. Sheriff Williams told another male employee of BCSO that merely looking at Plaintiff was grounds for termination.

104. Sheriff Williams shared with another employee that he thought Plaintiff was very attractive and that he was fascinated with her.

105. Sheriff Williams became upset and transferred Plaintiff when he learned that another deputy had brought or offered to bring her lunch.

106. Sheriff Williams barred deputies from Plaintiff's work area whom he believed were competitors for her attention.

107. Sheriff Williams threatened to terminate deputies if they assisted Plaintiff with her work or even spoke to her.

108. Sheriff Williams surreptitiously took photographs of Plaintiff and shared them with another deputy.

109. Sheriff Williams used his power and position to create a hostile work environment based upon sex and to coerce Plaintiff into unwanted personal interactions, including overnight hotel stays.

110. Plaintiff was subjected to continuous and egregious sexual harassment by Sheriff Williams.

111. This conduct was unwelcome, based on sex, and so severe or pervasive as to alter the terms and conditions of Plaintiff's employment.

112. No meaningful corrective action was taken despite Plaintiff reporting the harassment to Human Resources.

113. As Sheriff and policymaker, Williams's actions are imputed to the BCSO.

114. Furthermore, the BCSO is liable for Sheriff Williams's conduct because:

   a. He was Plaintiff's direct supervisor and final decision-maker,

b. The harassment resulted in tangible employment actions including transfers and termination,

c. The agency failed to take remedial action despite notice that Plaintiff was working in a hostile work environment based upon sex.

115. The hostile environment interfered with Plaintiff's mental and physical health.

116. The hostile work environment altered the terms and conditions of her employment based on her opposition to the sexual advances of the ultimate decision maker at the BCSO, the Sheriff.

COUNT II: SEX DISCRIMINATION VIA DISPARATE TREATMENT

(Official Capacity) (Title VII – 42 U.S.C. § 2000e-2(a))

117. Plaintiff re-alleges and incorporates by reference hereto paragraphs 1–116.

118. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1).

119. Plaintiff was subjected to less favorable treatment in the terms and conditions of her employment because of her sex (female).

120. Sheriff Williams attempted to create a quid pro quo sexual relationship with Plaintiff, which she opposed.

121. Sheriff Williams treated other similarly situated employees that he was not attracted to and who were male employees differently in the terms and conditions of their employment.

122. Plaintiff was reassigned multiple times to positions that kept her close to him and away from other male employees.

123. Plaintiff was publicly maligned and disciplined for not completing a book or for alleged insubordination, while other similarly situated employees who engaged in similar or more serious behavior were not subjected to the punishment.

124. Sheriff Williams made repeated decisions affecting Plaintiff's assignments, discipline, and termination based not on her job performance but on her sex and her opposition to his sexually motivated demands.

125. Plaintiff's termination occurred under circumstances giving rise to an inference of sex-based discrimination.

126. Plaintiffs was offered her job back by Sheriff Williams after he terminated her, which was another form of intimidation that other employees were not subjected to.

127. Plaintiff was fearful of Sheriff Williams after she was terminated.

128. Defendant BCSO is liable for Sheriff Williams's conduct as he served in a supervisory and policymaking capacity, and the agency failed to intervene or remedy the discriminatory actions despite having notice.

129. As a direct and proximate result of Defendants' unlawful sex-based disparate treatment, Plaintiff has suffered and continues to suffer loss of income, emotional distress, reputational harm, and other compensable injuries.

<u>COUNT III: RETALIATION</u>

<u>(Official Capacity) (Title VII – 42 U.S.C. § 2000e-3(a))</u>

130. Plaintiff re-alleges and incorporates by reference herein paragraphs 1–129.

131. Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice . . ." 42 U.S.C. § 2000e-3(a).

132. Plaintiff engaged in protected activity by opposing Sheriff Williams' sexual advances to sleep with him.

133. Plaintiff engaged in protected activity by making internal complaints to Human Resources and crying out for help.

134. The office was aware that Sheriff Williams was creating a hostile work environment for the Plaintiff based upon her sex.

135. After Plaintiff opposed his advances and complained to him that he was making working there difficult, she experienced a pattern of adverse employment actions.

136. Plaintiff was reassigned to jobs that she did not want to work in.

137. Sheriff Williams retaliated against her by terminating her employment when she had no write ups or progressive discipline in her file in an effort to intimidate her with his power.

138. Sheriff Williams further retaliated against Plaintiff by interfering with her employment opportunities and making defamatory statements about her.

139. Sheriff Williams retaliated by subjecting her to unwarranted discipline and termination for her opposition.

140. Sheriff Williams retaliated by creating a hostile and intimidating work environment.

141. Sheriff Williams' reassignment of Plaintiff to different positions were retaliatory in that they were made to either put her in a closer position to him or to punish her for not giving in to him and were not for a purely legitimate business reason.

142. These retaliatory acts would dissuade a reasonable employee from reporting sexual harassment.

143. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer loss of income, emotional distress, reputational harm, and other compensable injuries.

## COUNT IV: EQUAL PROTECTION VIOLATION

(Individual and Official Capacity) (42 U.S.C. § 1983 – Fourteenth Amendment)

144. Plaintiff re-alleges and incorporates by reference herein paragraphs 1–143.

145. Sexual harassment as a violation of the Equal Protection Clause of the Fourteenth Amendment has been clearly established in the 11th Circuit since, at least, 1995. *See*, *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 8 Fla. L. Weekly Fed. C 1157 (11th Cir. 1995)(" We conclude that a reasonable person in Horsley's position could not have believed doing nothing in light of Stricklin's conduct was lawful, in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights.")

146. Sheriff Williams, acting under color of law, deprived Plaintiff of her constitutional right to equal protection by subjecting her to sexual harassment and disparate treatment on the basis of sex.

147. His actions were not gender-neutral; he singled Plaintiff out for sexual harassment based on sex and retaliated when she refused to comply.

148. This disparate treatment violated Plaintiff's constitutional right to equal protection of the law.

149. His conduct was intentional, malicious, and without lawful justification.

150. No adequate training, policy, or oversight was in place to prevent this behavior, and the BCSO condoned or ignored prior complaints.

151. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, emotional distress, reputational harm, and other compensable injuries.

## COUNT V: STALKING

### (Individual Capacity) (Georgia Law – O.C.G.A. § 16-5-90)

152. Plaintiff re-alleges and incorporates by reference herein paragraphs 1–151.

153. Pursuant to O.C.G.A. § 16-5-90, stalking includes knowingly and willfully surveilling or contacting a person without consent for the purpose of harassment and intimidation.

154. Sheriff Williams tracked Plaintiff using a GPS device, monitored her social contacts, ran license plate checks, and sent messages like "you better remember payback."

155. His actions were intentional, served no legitimate purpose, and caused Plaintiff fear, anxiety, and emotional distress.

156. This conduct satisfies the statutory and common law elements of stalking under *Sinclair v. Daly*, 295 Ga. App. 613 and *Garnsey v. Buice*, 306 Ga. App. 565.

157. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, and other compensable injuries.

## COUNT VI: INVASION OF PRIVACY

### (Individual Capacity) (Georgia Common Law)

158. Plaintiff re-alleges and incorporates by reference herein paragraphs 1–157.

159. Georgia recognizes several privacy torts, including:

   a. Intrusion upon seclusion, and

   b. False light – engaging in publicity that placed Plaintiff in a false light.

160. Sheriff Williams unlawfully invaded Plaintiff's privacy by tracking her with a GPS device.

161. Sheriff Williams unlawfully invaded Plaintiff's privacy by performing license plate checks on her acquaintances.

162. These actions were offensive, unwarranted, and without public justification. See *Gettner v. Fitzgerald*, 297 Ga. App. 258; *Eason v. Marine Terminals Corp.*, 309 Ga. App. 669.

163. Sheriff Williams used his power and position as Sheriff to track her and conduct searches that the ordinary citizen would not be able to do.

164. Sheriff Williams's behavior was extreme, outrageous, and intentionally directed to cause harm.

165. As a result, Plaintiff experienced trauma, shingles, insomnia, and lasting psychological distress.

166. His conduct exceeds all bounds of decency tolerated by society and justifies punitive damages.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Individual Capacity) (Georgia Common Law)

167. Plaintiff re-alleges and incorporates by reference herein paragraphs 1–166.

168. Sheriff Williams repeatedly subjected Plaintiff to graphic and vulgar sexual propositions.

169. Sheriff Williams sent to Plaintiff sexually charged photos and messages.

170. Sheriff Williams retaliated against Plaintiff by changing the terms and conditions of her employment to punish her for opposing his sexual advances.

171. Sheriff Williams called Plaintiff derogatory names in the workplace, including calling her a "whore" and a "slut."

172. Sheriff Williams explicitly threatened retaliation, telling her, "You better remember payback."

173. Sheriff Williams physically intimidated Plaintiff by throwing flowers off her desk, yelling at her, and being in close physical proximity at times that made her uncomfortable but without the ability to really change for fear of retaliation.

174. Sheriff Williams placed Plaintiff and her acquaintances under surveillance tantamount to the crime of stalking and for the purpose of intimidating and retaliating against Plaintiff due to his sexual interest in her.

175. Sheriff Williams falsely claimed that Plaintiff was terminated for cause, causing her to be denied unemployment benefits as an additional act of retaliation.

176. The foregoing and other conduct by Sheriff Williams reflects an intentional, prolonged campaign of humiliation, sexual coercion, and retaliation, which exceeds all possible bounds of decency.

177. Sheriff Williams' text messaging and sexual conduct was reckless.

178. Sheriff Williams' text messaging and sexual conduct was intentional.

179. Sheriff Williams' text messaging and sexual conduct was extreme and outrageous.

180. Sheriff Williams' actions were a wrongful use of power over a subordinate and his conduct caused Plaintiff emotional distress.

181. The emotional distress suffered by Plaintiff was severe causing her to have shingles and other physical manifestations.

182. Sheriff Williams' conduct was extreme and outrageous conduct, going beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in the work place.

183. As a direct and proximate result of Sheriff Williams' actions, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, and other compensable injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment in her favor on all claims;
2. Reinstate her employment with the County in a different department;
3. Award back pay, front pay, and lost benefits;
4. Award compensatory damages for emotional distress and reputational harm;
5. Award punitive damages against Sheriff Williams;
6. Award prejudgment interest;
7. Grant injunctive relief prohibiting further retaliation or harassment;
8. Award attorney's fees and costs under 42 U.S.C. § 1988 and Georgia law;
9. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 6th day of May 2025.

    /s/ Tanya D. Jeffords
TANYA D. JEFFORDS
GA Bar No. 390055

    /s/ Kenneth S. Ratley

              KENNETH S. RATLEY
              GA Bar No. 359246
              Attorneys for Plaintiff

Law Offices of Tanya D. Jeffords and
Associates, PC
437 Walker Street
Augusta, GA 30901
Tjeffords@jeffordslaw.com
kratley@jeffordslaw.com
706-722-3019